UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United Healthcare Services, Inc.,　　　　　　　　　　Civil No. 23-2890 (DWF/ECW)

　　　　　　Plaintiff,

v.

AmerisourceBergen Corporation;　　　　　　　　　　**MEMORANDUM**
AmerisourceBergen Drug Corporation;　　　　　　　**OPINION AND ORDER**
AmerisourceBergen Specialty Group,
LLC; ASD Specialty Healthcare, LLC
*d/b/a* Oncology Supply Company; and
Medical Initiatives, Incorporated *d/b/a*
Oncology Supply Pharmacy Services,

　　　　　　Defendants.

# INTRODUCTION

This matter is before the Court Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. No. 27). For the reasons set forth below, the Court grants Defendants' motion.

# BACKGROUND

Plaintiff United Healthcare Services, Inc. ("UHS" or "Plaintiff") is a Minnesota corporation that services commercial insurance and managed-care programs for members and beneficiary plans offered by its subsidiaries and affiliates. (Doc. No. 1 ("Compl.") ¶ 26.) Defendant AmerisourceBergen Corporation ("AmerisourceBergen") is a pharmaceutical sourcing and distribution company with a pharmaceutical distribution segment that includes subsidiaries AmerisourceBergen Drug Corporation ("ABC Drug")

and AmerisourceBergen Specialty Group, LLC ("ABC Specialty") (collectively, "ABC" or "ABC Defendants"). (*Id*. ¶¶ 28-30.) ABC Specialty provides oncology distribution and related serves to hospitals and oncology centers nationwide. (*Id*. ¶ 30.) Defendant ASD Specialty Healthcare, LLC d/b/a Oncology Supply ("Oncology Supply"), formerly a division or subsidiary of ABC Specialty, was a pharmaceutical wholesaler but is no longer in business. (*Id*. ¶ 31.) Defendants Medical Initiatives, Inc. d/b/a Oncology Supply Pharmacy Services ("MII") operated out of Oncology Supply's Alabama facility and was acquired by AmerisourceBergen in 2001. (*Id*. ¶ 32.)

Plaintiff alleges that between 2001 and 2014, AmerisourceBergen, along with its Defendant subsidiaries, perpetrated an unlawful scheme (the "Program" or "PFS Program") to distribute and sell doses of adulterated oncology drugs to be administered to patients in Minnesota and nationwide, many that were insured under programs operated by UHS.[1] The Program involved MII, which created pre-filled syringes ("PFS") of oncology drugs for ABC Specialty to sell or distribute to healthcare providers. (*Id*. ¶ 32.) Plaintiff further alleges that AmerisourceBergen did not register MII with the FDA as required by law as a manufacturer or re-packager of prescription medications and that MII did not act as a pharmacy selling the PFSs. (*Id*.)

Under the Program, when filling a healthcare provider's order for a PFS, MII would draw the product from vials produced by the manufacturer into a syringe for

---

[1]  The PFS Program operated between 2001 and 2014. (Compl. ¶¶ 2, 128, 205.) MII ceased operations on January 31, 2014. *See Teamsters Local 442 Health Servs. & Ins. Plan v. Chou*, Civ. No. 2019-0816, 2023 WL 7986729, at *17 (Del. Ch. Nov. 17, 2023).

shipping to the customer and would then keep any excess product (the "overfill"). (*Id.* ¶ 139.) MII would then use the overfill to fill later prescriptions. (*Id.*) Per the Complaint, MII breached sterile vials of oncology drugs, pooled their contents, and created PFSs in Oncology Supply's unsterile facilities in Alabama. (*Id.* ¶¶ 125, 128.)

The practice of pooling and repackaging the overfill from syringes for clinical use was common in the industry, but Plaintiffs allege that MII's equipment and quality controls were in violation of federal manufacturing requirements and therefore that the syringes were "adulterated, dangerous, tainted, effectively worthless, and had no market value." (*Id.* ¶¶ 7, 9.) In addition, Plaintiffs allege the products' FDA-approved labels were false and misleading and violated CDC safety standards. (*Id.*) Also according to the Complaint, Defendants pushed physicians to purchase PFSs for a medicine called Procrit by paying them "kickbacks" in the form of rebates that violated federal and state law. (*Id.* ¶¶ 14, 112, 130.)

UHS reimbursed claims filed by providers or patients for syringes administered to UHS insureds. UHS acknowledges that Defendants did not themselves submit claims for payment to government healthcare programs or insurers. (*Id.* ¶ 151.) Instead, physicians and other healthcare providers who purchased PFSs from Defendants sought reimbursement from UHS.

The PFS Program was the subject of prior civil actions and government investigations. Beginning in 2010, these investigations were disclosed in Defendants' filings with the Securities and Exchange Commission ("SEC") and in other public sources. One such action began in October 2010, when a former employee of ABC

3

Specialty filed under seal a *qui tam* action under the False Claims Act, 31 U.S.C. § 3730(b), relating to MII and the PFS Program.² (Compl. ¶ 114.) AmerisourceBergen disclosed the existence of this action in its publicly filed SEC annual report, noting that the action involved allegations of kickbacks by the oncology distribution business. (Doc. No. 30 ("Mundel Decl.") ¶ 4, Ex. 2, AB Form 10-K at 3.³ In 2012, AmerisourceBergen disclosed in its annual report that the Alabama facility where MII and Oncology Supply were located was the subject of a related government investigation. (*Id.* ¶ 5, Ex. 3, AB Form 10-K at 3.) Further, there was media coverage of the investigation, which involved a raid of the Alabama facility by the Department of Health and Human Services and the FDA. (*Id.* ¶ 10, Ex. 8, Timothy W. Martin et al., *Wholesaler Subpoenaed Over Controlled Drugs*, Wall Street Journal (Aug. 9, 2012) (reporting that AmerisourceBergen received a subpoena "over an oncology supply distribution center and pharmacy in Dothan, [Alabama]" and that investigators served a search warrant at the facility.)⁴ AmerisourceBergen continued to disclose that the Alabama facility was under federal investigation in its 2013 and 2014 annual reports. (*Id.* ¶ 6, Ex. 4, AB Form 10-K at 3;

---

²     The U.S. Attorney intervened in the *qui tam* action on August 31, 2017, and the action was unsealed on October 1, 2018. (Compl. ¶ 114.)

³     The Court takes judicial notice of SEC filings, as well as materials posted on government websites. *See, e.g.*, *In re Resideo Techs., Inc., Sec. Litig.*, Civ. No. 19-2863, 2021 WL 1195740, at *3 (D. Minn. Mar. 30. 2021); *United States v. Garcia*, 855 F.3d 615, 621,22 (4th Cir. 2017).

⁴     The Court takes judicial notice of news reports to the extent that a report demonstrates that certain information was publicly available at a certain time. *See, e.g.*, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

¶ 7, Ex. 5, AB Form 10-K at 3.)  In 2015, AmerisourceBergen again specifically noted that the investigation related to the "former pharmacy's pre-filled syringe program." (*Id.* ¶ 8, Ex. 6, AB Form 10-K at 3.  Specifically, AmerisourceBergen stated:

> Since fiscal 2012, the Company and AmerisourceBergen Specialty Group ("ABSG") have been responding to subpoenas from the United States Attorney's Office for the Eastern District of New York ("USAO-EDNY") requesting production of documents and information relating to ABSG's oncology distribution center and former pharmacy in Dothan, Alabama (including the practices and procedures of the former pharmacy's pre-filled syringe program), its group purchasing organization for oncologists, and intercompany transfers of certain oncology products, which the Company believes could be related in whole or in part to one or more of the qui tam actions that remain under seal.  The Company continues to engage in dialogue with the USAO-EDNY.

(*Id.*)  And in 2016, AmerisourceBergen's annual report noted that the U.S. Attorney for the Eastern District of New York "expressed an intention to pursue potential civil and criminal charges based upon the FDCA and the False Claims Act." (*Id.* ¶ 9, Ex. 7, AB Form 10-K at 3-4.)

On September 27, 2017, the U.S. Attorney publicly filed a Criminal Information charging ABC Specialty with a strict liability misdemeanor under the FDCA based on the introduction of misbranded drugs into interstate commerce.  (Comp. ¶ 131.)  On that same day, ABC Specialty admitted to operating the PFS Program and pleaded guilty to a strict-liability misdemeanor count under the Food and Drug Cosmetic Act ("FDCA") for failing to register MII as a "repackager." (*Id.* ¶ 136.)  As part of the plea, ABC Specialty agreed to pay a criminal fine of $208 million and a criminal forfeiture of $52 million. (*Id.* ¶¶ 136, 138.)  The information, plea, and settlement were disclosed in a press release posted on the website of the Department of Justice.  (Mundel Decl. ¶ 11, Ex. 9, Press

5

Release, *Amerisourcebergen Specialty Group Pleads Guilty to Distributing Misbranded Drugs and is Sentenced to Pay $260 Million to Resolve Criminal Liability* (Sept. 27, 2017).)

In September 2018, Defendants also entered into a civil settlement with the United States in the *qui tam* False Claims Act ("FCA") action that was first disclosed in 2010 and two related *qui tam* actions under the FCA. (*Id*. ¶ 12, Ex. 10, Settlement Agreement Between United States and AmerisourceBergen *et al*. at 2.) The allegations in these actions related to sales of the same products at issue in the criminal case. Specifically, the government alleged that Defendants caused "false claims" to be submitted to federal healthcare programs for unapproved drugs and drugs that did not meet quality standards, as well as for drugs purchased as a result of the rebate program. While denying liability, Defendants agreed to pay $625 million to compensate the federal government and state Medicaid programs. (*See id*.; *see also* Compl. ¶ 139.)

UHS filed the present action on September 19, 2023.[5] The allegations in the Complaint include the same underlying conduct occurring from 2001 through 2014 that is the subject of the 2017 plea and the 2018 settlement. In its Complaint, UHS asserts five causes of action: (1) common law fraud (Count I); (2) a claim under the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. § 325F.69 & Minn. Stat. § 8.31 (Count II); (3) a claim under the Minnesota Unlawful Trade Practices Act ("MUTPA"), Minn. Stat.

---

[5] The parties engaged in pre-suit negotiations in 2022 and 2023, during which the parties agreed to toll the statute of limitations. Per those agreements, the filing date for this action related back to January 22, 2023.

§ 325D.13 (Count III); (4) a claim under Minnesota's Deceptive Acts Against Senior Citizens statute, Minn. Stat. § 325F.71 (Count IV); and (5) a claim for unjust enrichment/money had and received (Count V).

## DISCUSSION

### I. Motions to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).[6]

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative

---

[6] The Settlement Agreement and the September 27, 2017, information are both embraced by the allegations in the Complaint.

level." *Id*. at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

In addition, Federal Rule of Civil Procedure 9(b) requires "particularity" when pleading fraud or mistake. Fed. R. Civ. P. 9(b). Rule 9(b) applies to all claims premised on fraud, including "claims of false advertising, deceptive trade practices, unlawful trade practices, and consumer fraud." *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 983 (D. Minn. 2011); *see also* 5A Charles Alan Wright, et al., Federal Practice & Procedure § 1297 (3d ed.) (updated Apr. 2016) ("Even when a plaintiff is not making a fraud claim, courts will require particularity in the pleading if the cause of action is premised on fraudulent conduct."). To satisfy Rule 9(b), the complaint must plead the "who, what, when, where, and how" of the alleged fraud. *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013).

**II.      Statute of Limitations**

As a threshold matter, Defendants argue that each of UHS's claims are untimely. A motion to dismiss a complaint as time-barred is properly granted where "the complaint itself establishes the defense." *See Int'l Decision Sys., Inc. v. JDR Sols., Inc.*, Civ. No. 18-2951, 2019 WL 2009249, at *3 (D. Minn. May 7, 2019) (citing *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011)). To determine whether

UHS's complaint is self-defeating based on the statute of limitations, the Court first identifies the applicable limitations period, the date UHS commenced this action, and the date or dates that UHS's claims accrued. When a plaintiff argues that the statute of limitations was tolled under the doctrine of fraudulent concealment, those allegations must be pleaded with particularity. *Summerhill v. Terminex, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).

The Court addresses the statute of limitations issue as it pertains to UHS's claims below.

### A.   Statutory Claims (Counts II-IV)

Counts II-IV allege statutory violations. Under Minnesota law, an action based "upon a liability created by statute" is subject to a six-year statute of limitations. Minn. Stat. § 541.05, subd. 1(2). Thus, UHS's statutory claims are subject to this six-year statute of limitations. For these claims, the statute of limitations begins to run "when the alleged violations of the[] consumer statutes occurred." *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 926 (8th Cir. 2004); *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 957 (D. Minn. 2000), *aff'd*, 286 F. 3d 1051 (8th Cir. 2002). There is no dispute that the alleged violations of the relevant consumer statutes occurred outside of the statute of limitations because the complaint pleads all relevant conduct occurred between "approximately 2001 and 2014." Thus, the statute of limitations ran no later than 2020. This case was filed on September 19, 2023, which is three years beyond the limitations

period.[7] These statutory limitations periods are "not tolled by the failure of a party to discover" the action. *Block v. Litchy*, 428 N.W.2d 850, 854 (Minn. Ct. App. 1988) (citation omitted); *see Tuttle*, 377 F3d. at 926.

UHS does not dispute that its statutory claims were not filed within the six-year statute of limitations if the clock started in 2014 (when the conduct ended); instead, it argues that any such limitations period should be tolled by the doctrine of fraudulent concealment. Fraudulent concealment involves the "affirmative concealment of [the] cause of action" by the defendant. *Fredin v. Kreil*, Civ. No. 20-1929, 2020 WL 7427048, at *3 (D. Minn. Dec. 18, 2020) (internal quotations and citation omitted); *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975).[8] In addition, UHS must allege that it "could not have discovered the alleged concealment by reasonable diligence." *See Olson v. Amatuzio*, 799 F. App'x 433, 437 (8th Cir. 2020).

---

[7] As discussed above, the parties entered into an agreement to toll the statute of limitations and extended that agreement for a total of 240 days. Accounting for that time, UHS's filing date relates back to January 22, 2023. Using that date, the statutory claims are still untimely.

[8] UHS correctly points out that fraudulent concealment "achieve[s] the result in nonfraud cases that the 'discovery rule' achieves in fraud cases" by tolling the limitations period until the plaintiff actually or ought to have discovered the facts necessary to properly plead a cause of action. *Kopperud v. Agers*, 312 N.W.2d 443, 446 (Minn. 1981); *see also, e.g.*, *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 876 (D. Minn. 2012) (statutory claims). Even though the doctrine of fraudulent concealment and the discovery rule achieve the same result, they are applied differently to the relevant claims at hand. Namely, with respect to a fraud claim, the statute does not begin to run until discovery, and with respect to statutory claims, the statute runs from the date of the violation but will be tolled by a defendant's fraudulent concealment. *See Kopperud*, 312 N.W.3d at 446. Indeed, as noted by UHS, to adequately plead fraudulent concealment, one must allege that a defendant's conduct caused the non-discovery of the action by plaintiff.

Here, UHS alleges that AmerisourceBergen engaged in the following affirmative conduct that deterred it from learning the factual basis for its present claims: selling PFSs with deceptive records and packaging; removing drug labels and original expiration dates; making misstatements and omissions to regulators; and holding itself out as complying with safety standards and regulations.

The Court concludes that these allegations do not plausibly allege with particularity that AmerisourceBergen concealed UHS's causes of action and that UHS could not have uncovered any active concealment by reasonable diligence. Instead, UHS points to allegations of broad and unspecified statements related to adhering to safety and legal standards, as well as conduct that related to the activity that was ultimately investigated and disclosed in SEC filings. The statements do not constitute specific misrepresentations that concealed the UHS's causes of action. *But cf. Nat'l Hockey League Players' Concussion Inj. Litig.*, MDL No. 14-2551, 2015 WL 1334027, at *14 (D. Minn. Mar. 25, 2015) (noting allegations that the NHL took action intended to deter plaintiffs' inquiry into the matter). The alleged statements and conduct regarding the alleged fraudulent concealment do not demonstrate that AmerisourceBergen prevented or attempted to deter UHS from looking into the facts underlying its claims here. Indeed, UHS acknowledges that the announcement of the criminal charges in 2017 contained the factual details of UHS's present claims. (*See* Doc. No. 39 at 13.) Importantly, the criminal charges are premised on the same facts that were subject to investigations and actions that were repeatedly disclosed in AmerisourceBergen's SEC filings and covered

11

by the media. These disclosures belie UHS's claim that it only recently became aware of the facts giving rise to this action.

The Court concludes that UHS has failed to sufficiently allege fraudulent concealment. Because the limitations period ran no later than 2020 and UHS filed the present action in 2023, UHS's statutory claims are time-barred.[9] Therefore, Counts II, III, and IV are properly dismissed with prejudice.

### B. Unjust Enrichment and Money Had and Received (Count V)

UHS's claims for unjust enrichment and money had and received is also subject to a six-year statute of limitations. Minn. Stat. § 541.05, subd. 1(1); *Block v. Litchy*, 428 N.W.2d at 854 (unjust enrichment); *Twp. of Normania v. Yellow Med. Cnty.*, 286 N.W. 881, 884 (Minn. 1939) (money had and received). The statute begins to run "when the right of action accrues and when damage occurs." *Block v. Litchy*, 428 N.W.2d at 854. Further, the statute is not tolled by the "failure of a party to discover." *Id.* (citation omitted).

For all of the reasons discussed above with respect to UHS's statutory claims, Count V is untimely. Therefore, Count V is properly dismissed with prejudice.

---

[9] At the very latest, UHS would have had notice of statutory claims on November 22, 2016, when AmerisourceBergen revealed that the U.S. Attorney expressed its intention to pursue criminal and civil charges based on the PFS Program and the Alabama facility. Even if the Court used this date, UHS's statutory claims would still be untimely.

C.     **Common Law Fraud**

In Count I, UHS asserts a claim for common law fraud.  The statute of limitations for this claim is six years from "the discovery . . . of the facts constituting the fraud." Minn. Stat. § 541.05 subd. 1(6).  "Discovery" occurs "when, with reasonable diligence [the alleged fraud] could and ought to have been discovered."  *Bustad v. Bustad*, 116 N.W.2d 552, 555 (Minn. 1962) (citation omitted).

In support of its fraud claim, UHS alleges that Defendants made misleading statements or omissions about their role in the PFS Program and about rebates paid to physicians who purchased the PFSs.  (Compl. ¶ 179.)

As detailed above, AmerisourceBergen disclosed the existence of the *qui tam* suit in its annual shareholder reports beginning in 2010.  Going back to 2012, AmerisourceBergen, through its SEC 10-Ks, discussed the basics of the investigation into the Atlanta facility.  Also in 2012, the media covered a raid of the Atlanta facility by investigators for Department of Health and Human Services and the FDA.  By 2015, AmerisourceBergen was indicating that the case and investigation involved the PFS Program, specifically noting that the investigation related to the "former pharmacy's pre-filled syringe program" and that it had been responding to subpoenas from the United States Attorney's Office that requested documents and information relating to ABC Specialty's oncology distribution center and former pharmacy in Dothan, Alabama. Further, in November 2016, AmerisourceBergen disclosed more details about the pending investigation and even stated that the U.S. Attorney's Office had been investigating the Atlanta facility for several years and had expressed an intention to

13

pursue civil and criminal charges based upon the FDCA and the False Claims Act. Indeed, those charges were brought and UHS's present action alleges claims based on similar facts.

The Court concludes that the repeated disclosures revealed a basis for UHS to investigate AmerisourceBergen's conduct. At the latest, sufficient facts relevant to UHS's claims were either in the public domain or in UHS's possession by 2016 such that, with reasonable diligence, the alleged fraud could have and ought to have been discovered by UHS. UHS maintains that it could not have discovered the conduct at issue until 2018. The Court finds that this allegation is not supported by the facts contained or embraced by the Complaint. Because the statute of limitations began to run in November 2016 at the latest, UHS was required to bring its claim for common law fraud no later than November 2022. Because UHS did not bring this action until 2023, the common law fraud claim is untimely, and Count I is properly dismissed.

## CONCLUSION

USH brought this action in 2023 based on conduct that ended in 2014. Before the DOJ announced criminal charges in September 2017, UHS's causes of action accrued. As to UHS's statutory and unjust enrichment claims, the Court concludes that the relevant six-year statute of limitations began to run in 2014, when the last violations of damage occurred. The Court also concludes that UHS has not adequately pled that AmerisourceBergen fraudulently concealed the basis for the UHS's statutory claims against them. Therefore, UHS had until 2020 to file its statutory claims but did not do so until 2023. Thus, those claims are time-barred. Similarly, a six-year statute of

limitations applies to UHS's common law fraud claim. Because UHS could have and ought to have discovered this claim no later than November 2016, UHS had until 2022 to bring the common law fraud claim. UHS filed this action in 2023. Therefore, this claim is also time-barred.

Because the Court concludes that the claims are time-barred, it does not reach the Defendant's alternative arguments that UHS fails to state a claim for relief.

### ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. No. [27]) is **GRANTED**.

2. Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 24, 2024                         s/Donovan W. Frank
                                               DONOVAN W. FRANK
                                               United States District Judge